The Cecil Bank *vs.* The President, Directors & Co. of the Farmers Bank of Maryland.

The Bill of Exchange of J. A. D. & Co., of Port Deposit, on D. M. S., of Annapolis, dated August 6th 1860, at three months, payable to 'their own order, after having been endorsed by J. A. D. & Co., was delivered to, and held by the plaintiff (the Cecil Bank) who transmitted it to J. L. & Co., Bankers of Baltimore City, "for collection," endorsed by its Cashier, "Pay J. L. & Co., or order, for collection." J. L. & Co. afterwards sent it to the defendants, (The President, Directors & Co. of the Farmers Bank of Maryland,) endorsed by them:—"Pay N. H., Cashier, or order, for collection." The bill came into the hands of the defendants, and was paid by D. M. S., November 2nd 1860, (before maturity) and forthwith passed to the credit of J. L. & Co., on the books of the defendants, as was their custom in similar transactions between the same parties. J. L. & Co. suspended payment at 2 o'clock, P. M., October 30th 1860, which was known to the defendants on the following day. On the 1st of November ensuing, the plaintiff wrote to the defendants a letter, claiming the draft, and demanding that it should be held for its account, and on the 2nd of November in a letter enclosing an order of J. L. & Co., also dated November 1st, directing the delivery of the bill to the plaintiff, reiterated the former demand. The plaintiff sued for the whole amount of the bill, and the defendants claimed to retain, out of the proceeds thereof, a balance due to them by J. L. & Co. in their mutual dealings.—Held:

1st. That the legal import and effect of the endorsement of the plaintiff to J. L. & Co., "for collection," was to notify the defendants, to whom the bill was sent for collection by J. L. & Co., that the plaintiff was owner, and J. L. & Co merely agents for' collection, and with such' notice the defendants would have no right, as against the plaintiff, to detain the proceeds for the general balance of their account against J. L. & Co.

2nd. That if the endorsement of the plaintiff had been in the ordinary form, general and unrestricted, the question of mutual dealings between the defendants and J. L. & Co. would have properly arisen.

Appeal from the Circuit Court for Anne Arundel Co.

This was an action brought by the appellant against the appellees to recover the amount of a draft sent by them to Josiah Lee & Co., of Baltimore, for collection, and by the latter transmitted to the appellees for the same purpose. The case is thus stated in the opinion of this Court, delivered by Bartol, J.

This suit was instituted by the appellant to recover the amount of the following acceptance:

PORT DEPOSIT, Aug. 6th 1860.

$590.48. Three months after date, pay to our order, five hundred and ninety dollars and forty-eight cents, for value received, and charge to acc't of

Your obdt. serv'ts,

J. A. DAVIS & Co.

To D. M. SPROGLE, Esq.

Annapolis, Md.

Due Nov. 6–9.

Endorsed: J. A. DAVIS & Co.

"Pay Josiah Lee & Co., or order, for collection.

THOS. C. BOND, Cash'r."

"Pay N. Hammond, Cashier, or order, for collection.

JOSIAH LEE & Co."

The facts disclosed by the proof, so far as it is necessary to state them are these:

The bill, after being endorsed by J. A. Davis & Co., was delivered to and held by the appellant; it was then transmitted to Josiah Lee & Co., bankers in Baltimore city, "for collection," endorsed as above stated, by Bond, the cashier of the plaintiff. Josiah Lee & Co. sent it to the defendants, "for collection," with their endorsement thereon.

The bill came into the hands of the defendants on the 29th August 1860, and was paid by Sprogle, before maturity, on the 2nd November 1860, and on that day was passed to the credit of Lee & Co. on the books of the defendants, as other such collections were in the usual course of their dealings. The defendants had received collections for plaintiff through Lee & Co., and in no other way, had never opened an account with plaintiff nor been instructed so to do: the account was always kept with Lee & Co., the endorsement on the notes making no difference in the mode of keeping the account. The plaintiff gave in evidence three letters, and an

order; the first letter from the plaintiff to the defendants, dated 2nd November 1860, claiming the draft and asking that it be held for its account; the second letter, dated 3rd November 1860, inclosing an order from Lee & Co., in conformity with the first, and repeating the demand; the order was dated 1st November 1860, signed by Lee & Co., directing the defendants to deliver the draft to the plaintiff as its property; and the third letter was a reply from N. Hammond, cashier of the defendants, to the plaintiff, stating that before the receipt of letters one and two, the draft had been paid, the proceeds credited on their books to J. Lee & Co., and that they retained the balance now due by them to J. Lee & Co., with all other collections, until the rights of Lee & Co's assignee and other claimants were settled and legally defined. It was admitted that the plaintiff and defendants had not then, nor at any time, accounts and joint dealings with each other.

Josiah Lee & Co. failed, or suspended payment about 2 o'clock, P. M., on the 30th of October 1860; this was known to the defendants the following day. It appears from the accounts between the defendants and J. Lee & Co., and from the testimony of Mr. Hammond, the cashier, that after the 30th of October the account did not alter except by the receipt of sums which went to the credit of J. Lee & Co., and that J. Lee & Co. owed the defendants a balance in their mutual dealings, which the defendants claimed to retain out of the proceeds of the draft. The plaintiff sought to recover the whole proceeds of the draft as its property, without any deduction of the balance due the defendants by J. Lee & Co., and for that purpose presented three prayers to the Court, which were as follows:

1st. If the jury shall find, from the evidence, that the plaintiff was the holder of the acceptance of D. M. Sprogle, given in evidence, and that, as such holder, transmitted it to Lee & Co., for collection, and shall find that it was

so endorsed by the plaintiff at the time of such transmission, if they find such transmission; and if they shall further find that Lee & Co. transmitted it to defendants for collection, and in like manner so endorsed for collection, and shall find that said Sprogle paid the amount thereof to said defendants, that then said plaintiff is entitled to recover, unless the jury shall find the said defendants paid the proceeds thereof to said Lee & Co., or gave the said Lee & Co. a new or extended credit after the receipt thereof, if they find such receipt, on the faith of such receipt.

2nd. If the jury shall find the facts as stated in the foregoing prayer, and shall find such payment to the defendants by said Sprogle, then the plaintiff is entitled to recover, unless the jury shall find that after such payment said defendants, without any knowledge of the ownership by said plaintiff of said acceptance, or demand of the said acceptance or proceeds thereof by plaintiff of defendants, parted with some property to or gave said Lee & Co. a new credit, or extended some old credit on the faith of such payment.

3rd. That if the jury shall find the facts stated in the first prayer, and shall find that said acceptance, as given in evidence, was endorsed by the plaintiff to Lee & Co. "for collection," that the use of such words in such endorsement was notice of the special agency of said Lee & Co. for such collection, and that said plaintiff is entitled to recover, unless the jury shall find that said defendants, after the payment thereof by said Sprogle, if they find such payment, paid the same to Lee & Co. in the ordinary course of business, and without any notice or claim of said plaintiff not to make such payments.

The Court below, (BREWER, J.) refused to grant these prayers, and the verdict and judgment being for less than the amount claimed, the plaintiff appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, and COCHRAN, J.

*Geo. H. Williams* and *J. Mason Campbell*, for the appellant, contended:

That the appellees, having knowledge of the failure of Lee & Co., approached Sprogle to obtain a draft, which they then had possession of, specially endorsed to them for collection, and specially endorsed to Lee & Co. for the same purpose, and that so having full knowledge that it was the property of the Cecil Bank, they procured its payment prior to maturity, in order to impound the money of the Cecil Bank for the payment of Lee & Co's debt to them, and that the law will not sanction or tolerate such a wrong. *Byles on Bills*, 121, 122. *Story on Prom. Notes, sec.* 143. *Story on Bills, secs.* 206, 211 and 221.

That the appellant's first and second prayers correctly stated the law. *Thomas Wilson & Co. vs. Smith,* 3 *Howard's S. C. R.,* 635. *Bank of Metropolis vs. New England Bank, Howard's S C. R.,* 234 and 6. *Id.* 212. *McBride vs. The Farmers Bank,* 25 *Barbour's S. C. Rep. N. Y.,* 656. *Wheeler vs. B. & O. Rail Road Co., Garnishees Central Ohio R. R. Co.,* 18 *Md. Rep.,* 372. *Cranch vs. White,* 27 *Eng. C. L. R.,* 438, 1 *Bing. N. C.,* 414. *Sigourney vs. Lloyd,* 8 *B. & C.,* 622; also in 5 *Bingham,* 525, and also in *Ross on Common Law,* 82 *Law Lib.,* 203.

And that the appellant's third prayer was strictly conformable to evidence which had not been objected to, and which no effort had been made to contradict; that of itself the law would have given the meaning of the words "for collection," which the witnesses gave, and therefore the appellees received the money of the Cecil Bank with full notice. *Williams vs. Woods et al.,* 16 *Md. Rep.,* 251.

*A Randall* and *A. B. Hagner* for the appellee, con-

tended that the Court below was right in rejecting all these prayers:

1st. Because they ignore entirely and exclude from the jury the course of business between Lee & Co. and the defendants, and between Lee & Co. and the plaintiff, as proved in the cause—indeed assume a course of business dealing inconsistent with what was proved to be that adopted by themselves. *Bank of Metropolis vs. Bank of New England*, 1 *Howard*, 238. *B. & O. Rail Road vs. Wheeler*, 18 *Md. Rep.*, 381. *Bank of Metropolis vs. Bank of New England*, 6 *Howard*, 227.

2nd. Because such an endorsement, "for collection," made on negotiable paper sent by one bank to another to be collected and accounted for, does not restrict the control of the bank receiving it, in its settlement with the bank sending it, or require separate accounts thereof; but merely indicates that the paper is not assigned for value, and that the bank receiving it, is to account with the bank sending it, for its proceeds. *Story on Prom.*, *sec.* 195, *p.* 222.

3rd. Because the jury were not at liberty, if any of these prayers were granted, to find that the defendants had paid the plaintiff or any one who they may find to be the real owner of this draft.

4th. Special objection to the first prayer:

Because it assumes that the defendants had the right to pay over to Lee & Co. the proceeds of this draft, or hold them as specially pledged for a new or extended credit which the defendants might give to Lee & Co., and yet it denies to the defendants a right to settle with Lee & Co. for these proceeds in any other manner, or to hold them for any other pledge, which is inconsistent and contrary to the course of their dealings with Lee & Co., and calculated to mislead the jury. *Swift vs. Tyson*, 16 *Peters' U. S. Rep.*, 1. 1 and 6 *Howard*, before referred to. *Clements vs. Smith*, 9 *Gill*, 160. *Long vs. Eakle*, 4 *Md. Rep.*, 454.

5th. Special objection to the second prayer:

Because it states that the plaintiff is entitled to recover unless the jury shall find that after the payment of the draft, the defendants, without knowledge of the plaintiff's ownership of the draft, parted with property or gave credit on the faith of the payment, whereas the rights of the defendants might arise and did arise from acts preceding this payment, and were not dependent upon this want of knowledge of ownership, or on any credit given to Lee & Co. on the faith of this payment; and because there was no proof in the cause from which the jury could make such finding. *Long vs. Eakle,* 4 *Md. Rep.*, 454.

6th. Because the prayer excludes the jury from the right to find that the defendants paid Lee & Co.

7th. Special objection to the third prayer:

Because the jury are required thereby to find for the plaintiff, unless they find that the defendants paid the proceeds of the draft to Lee & Co. in the ordinary course of business, and without any notice or claim of the plaintiff not to make such payment, whereas the defendants were to settle such proceeds in any manner with Lee & Co , and that, too, without regard to any such notice or claim of the plaintiff.

BARTOL, J., after stating the facts of the case (*ante* pp. 148–150,) delivered the opinion of this Court as follows:

The third prayer will be considered first. This presents the question of the effect of the words, "for collection," in the endorsement made by the plaintiff to J. Lee & Co. In our opinion, the legal import and effect of such endorsement, was to notify the defendants, to whom the draft was sent by Lee & Co. for collection, that the plaintiff was owner, and J. Lee & Co. merely agents for collection; and with such notice the defendants would have no right, as against the plaintiff, to detain the pro-

ceeds for the general balance of their account against J. Lee & Co. This principle was distinctly decided by the Supreme Court in the case of *Bank of the Metropolis vs. The New England Bank*, 6 *Howard*, 212. In that case the New England Bank was plaintiff, the Bank of the Metropolis was defendant, while the Commonwealth Bank stood towards them in the same position here occupied by ·J. Lee & Co. In stating the law in the form of an instruction, proper to be given to the jury, the Court say, page 227: "If upon the whole evidence before them, the jury should find that the Bank of the Metropolis, at the time of the mutual dealings between them, had notice that the Commonwealth Bank had no interest in the bills and notes in question, and that it transmitted them for collection, merely as agent, then the Bank of the Metropolis was not entitled to retain against the New England Bank for the general balance of the account with the Commonweath Bank."

In that case the notice was a fact to be found by the jury from the proof in the cause; in this case, as we have already said, that notice was conveyed to the defendants by the terms of the plaintiff's endorsement, which brings this case clearly within the principle laid down by the Supreme Court above cited.

By the third prayer the Circuit Court was called on to instruct the jury upon the legal import and effect of the endorsement, which being a part of the written contract between the parties, was to be construed by the Court. The words are not ambiguous or obscure, and therefore no parol evidence was necessary to explain their technical meaning. See *Williams vs. Woods et al.*, 16 *Md. Rep.*, 251.

The law as pronounced by the Supreme Court, we adopt, as governing the case before us; it is alike consistent with reason and justice, and supported by authority,

if any authority were needed to support the decisions of that learned Court.

In our opinion the third prayer correctly stated the law of this case, and ought to have been granted; and this makes it unnecessary to examine particularly the first and second prayers; they fall short of the proposition contained in the third prayer, and state the law less favorably for the plaintiff than it had the right to ask. If the endorsement of the plaintiff had been in the ordinary form, general and unrestricted, the question of mutual dealings between the defendants and J. Lee & Co. would have arisen, and the law applicable to such a case is also settled by the decision of the Supreme Court in the case above cited from 6 *Howard R.*, 212. See also the same case, 1 *Howard*, 234. *Wilson & Co. vs. Smith*, 3 *Howard*, 763, and *McBride vs. The Farmers Bank*, 2⅘ *Barbour*, (*N. Y.*) 658.

*Judgment reversed, and procedendo ordered.*