HILLIARD v. LYONS.†

(Circuit Court of Appeals, Third Circuit. August 19, 1910.)

1. BILLS AND NOTES (§ 452*)—DEFENSES—FAILURE OF CONSIDERATION.
Failure of consideration is a defense to a note as between the immediate parties.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1367-1371; Dec. Dig. § 452.*]

2. TRIAL (§ 34*)—ADMISSIONS IN AFFIDAVIT OF DEFENSE—RULE OF COURT MAKING AFFIDAVIT OF DEFENSE A PLEADING.
Where by rule of court an affidavit of defense is made a part of the pleadings, the admissions contained in it are available to the plaintiff at the trial, without having been formally offered in evidence; only disputed facts having to be proved, and these being undisputed. It is not the same as if the affidavit were a mere admission, which might be explained away by the defendant with her attention called to it.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 87; Dec. Dig. § 34.*]

3. TRIAL (§ 39*)—ADMISSIONS IN AFFIDAVIT OF DEFENSE—HOW BROUGHT INTO RECORD.
Where an affidavit of defense by rule of court is made a part of the pleadings, and admissions contained in it are twice made the basis of objections by the plaintiff to offers of evidence, this had the effect of bringing these admissions upon the record, as did the affirmance by the court of a point that under the pleadings and evidence the verdict must be in favor of the plaintiff.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 92-98; Dec. Dig. § 39.*]

4. BANKS AND BANKING (§ 117*)—ACTS OF CASHIER—AGENCY.
The act of a bank cashier in inducing defendant to execute a note to the bank for discount by it, the proceeds to be invested by the cashier for defendant's benefit, and his act in receiving the proceeds, were acts of defendant's agent and not the bank's, and hence defendant cannot assert failure of consideration as a defense to the note, although the cashier appropriated the proceeds to his own use; the bank having discharged its duty to defendant by turning the proceeds over to the cashier as the defendant's accredited agent.
[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 288; Dec. Dig. § 117.*]

5. BANKS AND BANKING (§ 116*)—IMPUTED NOTICE—FRAUD.
Though generally the knowledge of an agent, acquired in the course of his agency, is imputed to the principal, a bank is not chargeable with notice of its cashier's fraud in inducing defendant to make a note to the bank for discount by it, the proceeds to be invested by the cashier for defendant's benefit, though he intended from the beginning to misappropriate the proceeds, since knowledge of an agent's fraud is not imputable to

the principal, where actual knowledge of the facts by the principal would defeat the consummation of the fraud.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 282–287; Dec. Dig. § 116.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by Robert Lyons, receiver of the Allegheny National Bank, against Roberta T. Hilliard. Judgment for plaintiff, and defendant brings error. Affirmed.

Morton Hunter, for plaintiff in error.

John S. Wendt, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. This action is brought by the receiver of the Allegheny National Bank on a promissory note for $10,-000, executed by the defendant to the order of the bank and discounted by it. The defense set up is the want of consideration. The contention is that the defendant signed the note at the instance of William Montgomery, the cashier of the bank, upon the understanding that he was to invest the proceeds for her, which he failed to do, in consequence of which she got no benefit from it, and therefore is not liable, the bank being affected by the participation of the cashier in the transaction. The production of the note made a prima facie case, the signature being admitted; and, no defense in the opinion of the court having been shown, a verdict was directed.

The action being between the immediate parties to the note, the failure of consideration was available to the defendant, if properly made out, but the difficulty is that it was not. The defendant relies on the fact that she did not herself get the proceeds, or that they were not credited to her, Montgomery testifying that he does not remember who got the money, except that she did not. But the bank was not bound, as it is claimed, to see that she got the money in this way. It is enough that it was put at the disposal of Montgomery, her agent in the transaction; and that he got it there can be no question. It is averred by the defendant, in her affidavit of defense, that having signed and delivered the note to Montgomery in blank, for the purpose of having it filled out and discounted for her, Montgomery negotiated it with the bank, and appropriated the proceeds. The admissions in the affidavit were evidence for the plaintiff, and, while it does not appear that the affidavit was formally offered, these admissions were twice made the basis of objections to offers by the defendant, which had the effect of bringing them upon the record, as did the affirmance by the court of the plaintiff's point that under the pleadings and evidence the verdict must be in favor of the plaintiff. It is not the same as if the affidavit was a mere admission, which, with her attention called to it, the defendant might possibly explain away. By rule of court where the case was tried the affidavit was a pleading, of which the court took notice, and by which the defendant is concluded

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

while it stands. And, in view of the express averment there made by the defendant that Montgomery got the money, it is idle to urge that what became of it was not shown. It is only disputed facts that have to be proved, and, this being undisputed, no proof was required.

It is said, however, that Montgomery was the cashier, and that therefore the bank had notice of the fraud and was affected by it. But that in dealing with the bank with respect to this note he was the agent of the defendant, whatever his official position outside of that, there can be no question. The defendant herself testifies that he was to negotiate the note for her as he did, and in doing so he certainly did not represent the bank, and neither did he in receiving and making away with the proceeds. The bank having accepted the note for discount, which admittedly was done by the express authority of the directors, was not bound to see that the defendant got the money, so long as it was turned over to her accredited agent and so made available to her. The defection came after the bank's participation in the transaction had ended, when Montgomery failed to invest it as he had agreed to—a breach of faith with which the bank had nothing to do, and which the fact that Montgomery was its cashier in no respect qualifies. In Gunster v. Scranton Illuminating Heat & Power Company, 181 Pa. 327, 37 Atl. 550, 59 Am. St. Rep. 650, Jessup, who was treasurer of the defendant company, was also vice president of the Scranton City Bank and in charge of it as manager. As treasurer of the heat and power company he executed two promissory notes for $8,000, which as vice president of the bank he discounted, and gave the company credit for the proceeds, which he thereupon abstracted and appropriated. In a suit against the company on the notes it was sought to charge the bank with knowledge of the fraud and responsibility for it by reason of Jessup's dual capacity. But it was held that his acts in discounting the note being within his authority as treasurer were lawful and regular, and that the bank had no part in what he did after that, the money being then the money of the heat and power company, and embezzled by him as such. So in Terrell v. Bank, 12 Ala. 502, a note was executed in blank and delivered by the maker to the director of a bank, to be filled in for a certain sum and used in renewal of one that had been already discounted. The director, however, filled out the note for a larger sum, and had it discounted for his own benefit, and appropriated the proceeds, and it was held that this could not be set up by the maker of the note to avoid responsibility on it. "It cannot be admitted," as it is said, in disposing of the case, "that in receiving the blank of the defendant to be used for his own benefit Scott [the director] acted as agent of the bank; and certainly he did not thus act in abusing the authority conferred on him by the defendant."

It is no doubt true that knowledge of an agent acquired in the course of his agency is generally to be imputed to the principal, who is bound accordingly. But, assuming that this rule applies, and that in obtaining the note from the defendant here and in negotiating it and appropriating the proceeds Montgomery was actuated from the beginning with a dishonest and fraudulent motive, knowledge of it is not to be imputed to the bank, whose cashier he was, it being a well-estab-

lished exception to the rule that no such imputation is to be indulged, where knowledge of the facts by the principal would defeat the consummation of the fraud which the agent is engaged in perpetrating (American Surety Company v. Pauly, 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977), a doctrine which has been recently recognized and applied in this court in Lilly v. Hamilton Bank, 178 Fed. 53.

It is said that the extent and character of Montgomery's agency were involved, and that this necessarily carried the case to the jury. But there was no dispute as to his relation to the defendant in the transaction, it being conceded by her, as we have seen, that he was her agent to negotiate the note and receive and invest the proceeds; the only complaint being that he did not do so. And there being no question as to this, and the money having been intrusted to and appropriated by him in the course of his agency, there is nothing for the defendant to do but to bear the loss of it.

Judgment affirmed.