### STALLO v. WAGNER.

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

No. 195.

1. BANKS AND BANKING ⬤⟿287(4)—CLAIMS—LIABILITY—FRAUD.

A depositor in a national bank received statements, accompanied by receipts, reciting that, unless notified to the contrary within 10 days, the balance as shown would be considered correct and the vouchers genuine. In some cases the depositor signed the receipts himself, and in others they were signed by his authorized agent. Several years thereafter, the bank meantime having been closed and a receiver appointed, the depositor attacked the statements and balances as shown, claiming that large sums

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

had been diverted from his account. *Held*, that there could be no recovery, unless fraud was established.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1097–1104, 1126, 1127; Dec. Dig. ☞287(4).]

2. FRAUD ☞50, 58(1)—PRESUMPTIONS—FRAUD.

Fraud is never presumed, and must be proven by a clear preponderance of the testimony.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47, 55; Dec. Dig. ☞50, 58(1).]

3. BANKS AND BANKING ☞287(4)—DEPOSITS—EVIDENCE—SUFFICIENCY.

Where a depositor in a national bank, several years after receiving his statements, alleged that large sums had been diverted from his account, evidence *held* insufficient to establish any fraud on the part of the bank, warranting recovery against a receiver of the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1097–1104, 1126, 1127; Dec. Dig. ☞287(4).]

4. BANKS AND BANKING ☞287(4)—PRESIDENT—AGENCY—BURDEN OF PROOF.

Where a depositor and the president of a national bank were closely allied in business transactions, and the president made deposits and in many respects controlled the depositor's account, the depositor, in an action against the receiver of the bank, has the burden of proving that the president was the agent of the bank, and not his agent, in misapplying funds.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1097–1104, 1126, 1127; Dec. Dig. ☞287(4).]

5. BANKS AND BANKING ☞262—PRESIDENT—AUTHORITY.

Where a depositor authorized the president of a national bank to act for him in making payments on notes, the fact that the depositor was only an accommodation maker of the note is immaterial, on the question of the president's agency.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1001–1006; Dec. Dig. ☞262.]

6. BANKS AND BANKING ☞262—PRESIDENT—AGENCY OF.

Where national bank depositor gave the president of the bank bonds to be sold and the proceeds to be deposited, and also checks for the amount to be realized from the sale, which were to be applied by the president to certain payments, the president was the agent of the depositor, and not of the bank, in making the application of the proceeds, and the bank is not liable for misapplication therefor, for such notice to the president was not notice to the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1001–1006; Dec. Dig. ☞262.]

Cross-Appeals from the District Court of the United States for the Southern District of New York.

Bill in equity by Edmund K. Stallo against Petro E. Wagner, as receiver of the Mt. Vernon National Bank. From the decree, complainant appeals, and defendant files cross-appeal. Reversed and remanded, with directions to modify decree by dismissing bill.

Stallo was a depositor in the Mt. Vernon (Westchester County, N. Y.) National Bank from October 2, 1909, until it was closed by the Comptroller of the Currency on or about March 24, 1911. His account was last balanced on January 18, 1911, and showed a credit of $36.69. Wagner is the receiver of the bank. From a time prior to the opening of Stallo's account, and until failure, one Jennings was the bank's president. Stallo never had any personal dealings with this banking institution, and never saw it during business hours. Both he and Jennings had offices in New York City, and were jointly interest-

ed in several somewhat hazardous enterprises, none of which had any connection with the bank. Stallo's deposit account was the result of his connection with Jennings, and his relation of depositor, plus Jennings' position as president, rendered it possible to discount or otherwise negotiate Stallo's paper, for use in the ventures in which Jennings and Stallo were jointly concerned. Stallo's passbook was eight times balanced during the period of deposits, and after four of these balances the book was returned to him with vouchers, and a receipt which he was asked to sign and return. The receipt contained these words: "Unless notified to the contrary within ten days, balance as shown will be considered correct and the vouchers genuine." In every instance the receipt was signed and returned, three times by Stallo's secretary, who had authority so to do, and once by the plaintiff himself. Subsequent to the failure Jennings and the cashier of the bank (both of whom have been witnesses herein) were convicted under the National Bank Act (Act June 3, 1864, c. 106, 13 Stat. 99) of misapplication of funds, and are now undergoing imprisonment therefor.

This bill is brought to set aside the account stated (if it be one) produced by acquiescence in the balances rendered from time to time by the bank, and to restate or ascertain the true condition of Stallo's account, alleged to be some $70,000 greater than the sum stated on final balance in the passbook. It is alleged that said apparent balance was produced "through fictitious entries on the part of" the bank and "in fraud of the rights of the plaintiff in the premises." The court below permitted plaintiff, not only to introduce evidence tending to show the fraud complained of, but the origin and amount of the money items thought by Stallo's accountant (he himself had no knowledge of the books or papers summarized or otherwise used in evidence) to be wrongfully inserted in or omitted from the passbook account. By this method of trial the questions presented both here and below are whether Stallo, either as a depositor or otherwise, is or ever was a creditor for, or was wrongfully charged with, all or any of ten certain sums of money. The trial judge held as to nine of the claims presented that Stallo had no just complaint. For the tenth he was given a decree as a general creditor. From this both parties appealed.

For opinion below, see 220 Fed. 360.

Rockwood & Haldane, of New York City (Charles A. Winter and Nash Rockwood, both of New York City, of counsel), for plaintiff.

Barber, Watson & Gibboney, of New York City (Stuart G. Gibboney and George M. Burditt, both of New York City, of counsel), for defendant.

Before WARD and ROGERS, Circuit Judges, and HOUGH, District Judge.

HOUGH, District Judge (after stating the facts as above). The bill is so drawn as to render it difficult to ascertain the branch of equitable jurisdiction upon which plaintiff relies. The sufficiency of the pleading has not been challenged at trial or on argument, and we have stated and taken the allegations most favorably to the pleader. As so construed the case falls within Dunbar v. Miller, 1 Brock. 85, Fed. Cas. 4,130, and Brydie v. Miller, 1 Brock. 147, Fed. Cas. No. 2,071, and, as to some of the claims advanced, Union Stockyards Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724, and perhaps Manhattan Bank v. Walker, 130 U. S. 267, 9 Sup. Ct. 519, 32 L. Ed. 959. This is mentioned in order that the form of pleading may not seem to meet with approval. If objected to, the bill would certainly have been ordered redrawn, that the issues might be more clearly presented.

Plaintiff brought no suit, and presented no claim against the bank

or its receiver, until more than a year and a half after failure, and the present action was not begun until three years after the bank was closed.

[1-3] The gist of this suit is fraud, which is never presumed, and must be proven by a fair preponderance of credible testimony, for the purpose of oversetting the effect of Stallo's long acquiescence in the accounts submitted by the bank. Leather Mfrs.' National Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; Morgan v. United States Mortgage, etc., Co., 208 N. Y. 218, 101 N. E. 871, L. R. A. 1915D, 741, Ann. Cas. 1914D, 462. Accordingly the pleading and plaintiff's direct evidence contain abundant statements to the effect that he always objected to the accounts rendered, demanded and was promised explanations of the matters objected to, and was lulled into inaction by promises of Jennings and Raymond (the cashier) to render "a full accounting" wherein "everything would be explained." When these allegations are tested by the cross-examination and documentary evidence, they fail completely. What Stallo did seek for was, not an explanation of his bank account, but of his financial relations with Jennings, arising from matters in which the bank was not interested, but for which it was made a convenience, both by Stallo and Jennings. In one instance, after pleading an objection to an item charged against him, plaintiff was confronted with his own written approval of the same. He asserted positively that in his relations with Jennings he did not loan the latter money, yet later claimed that Jennings owed him upwards of $50,000; and he denied when on the witness stand that he was ever jointly interested with Jennings in the purchase of the share control of a bank in Oneonta, N. Y., yet admitted that on the trial of Jennings for misapplication of bank funds he had testified, not only that he was so interested, but that Jennings "was authorized to use money of mine" therein. If Jennings and Raymond are believed, every item complained of was proper, but the lower court was naturally loath to place confidence in their testimony. We find it unnecessary to do more than point out that the documentary evidence is throughout consistent with the version of affairs given by Jennings, and we hold that Stallo is to say the least a most unpersuasive witness, whose statements so lack corroboration that we are clear that no fraud on the part of the bank has been shown.

[4] Plaintiff's position seems to be that because Jennings, as its president, defrauded the bank, therefore, whenever he gave the bank any orders in respect of Stallo's affairs, he was defrauding Stallo on behalf of the bank. No such conclusion is permissible. The proven relations between Stallo and Jennings were such that when, so long after accounts rendered, Jennings' acts are complained of, the burden of proof is strongly on plaintiff to show, not only that such act was wrong per se, but that it was committed by Jennings in his capacity of bank president, instead of as Stallo's agent.

The ten items of contention may be divided into classes for purposes of discussion. The first class is of charges made against Stallo's account and duly reported to him, by charge or debit slips showing

on their face that such debits had been entered by or for Jennings (claims 2, 3, 4, and 6). There being no fraud shown, plaintiff cannot at this late date complain of the charges, under the cases above cited.

The second class is of instances in which plaintiff's account was charged with the amount of unpaid commercial paper, for which he had not received original credit. Stallo alleges that he was entitled to such credit. In each case he acquiesced in the charge for years, and in each case he has failed to affirmatively prove that he ever was entitled to the credit claimed (claims 8 and 10).

[5, 6] The third class is of matters having no legal connection with Stallo's deposit account, and wherein the bank is sought to be treated as Stallo's agent. The questions are whether Jennings in negotiating (claim 7) certain bonds of plaintiff's, and a note (claim 5) made by plaintiff, was acting for the bank or for Stallo. We have no doubt that in both instances he was acting for and with Stallo, and as the latter's agent. Hilliard v. Lyons, 180 Fed. 685, 103 C. C. A. 651. That plaintiff was perhaps an accommodation maker of the note is of no importance. Israel v. Gale, 77 Fed. 532, 23 C. C. A. 274; Id., 174 U. S. 391, 19 Sup. Ct. 768, 43 L. Ed. 1019.

The fourth class is of one claim only (No. 1), which as pleaded rests on an alleged wrongful failure to credit Stallo's account with three checks, aggregating $12,500, sent by him to the bank in December, 1909. It is enough to say of this demand that we believe it proven that said checks were lawfully used, to Stallo's knowledge and with his consent, to take up a draft equaling the aggregate of the checks, on which plaintiff had become liable to the bank.

The fifth class also contains but one claim (No. 9) based upon the admitted fact that on January 6, 1911, plaintiff drew four checks on and in favor of the bank, covering an exact amount which Jennings had on the previous day deposited to plaintiff's credit. Stallo gave the checks to Jennings, with (as he says) specific directions as to the application of their proceeds. He did not own the money which Jennings had deposited; it was the property of a corporation in which both Jennings and Stallo were concerned. The latter now alleges that Jennings used two of the checks for purposes other than agreed upon; hence this demand. The difference between this and the claims of the third class is that the checks were drawn to the bank's order.

But Jennings was the only channel of communication between Stallo and the bank, and any notice or instruction that Stallo could have given to any bank official was part of a private business arrangement between himself and Jennings. Notice is not given a corporation by communicating the same to one's partner, who is also a corporate officer, when the subject of notice is a partnership affair. Hilliard v. Lyons, supra, applies, on plaintiff's own statement, which we have used for argument only.

The bill has no merit, and the cause is remanded, with directions to modify the decree below by dismissing said bill, with costs in both courts.